# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of -- )
)
American International Contractors, Inc. ) ASBCA Nos. 60948, 61166
)
Under Contract No. W912ER-14-C-0002 )

APPEARANCES FOR THE APPELLANT: Scott M. Heimberg, Esq.
Mark J. Groff, Esq.
Elise A. Farrell, Esq.
    Akin Gump Strauss Hauer & Feld LLP
    Washington, DC

APPEARANCES FOR THE GOVERNMENT: Michael P. Goodman, Esq.
    Engineer Chief Trial Attorney
Rebecca L. Bockmann, Esq.
Sarah L. Hinkle, Esq.
    Engineer Trial Attorneys
    U.S. Army Engineer District, Middle East
    Winchester, VA

## OPINION BY ADMINISTRATIVE JUDGE O'CONNELL ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

Pending before the Board are the parties' cross-motions for summary judgment on appellant's claim seeking the return of liquidated damages withheld by the government. We grant the government's motion in part and deny it in part. We deny appellant's motion.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS

Unless otherwise noted, the following facts are undisputed or uncontroverted.

1. On 21 January 2014, the U.S. Army Corps of Engineers, Middle East District (Corps), and American International Contractors, Inc. (AICI) entered into a contract for a project entitled United Kingdom Maritime Component Command (UKMCC) Development, Mina Salman Port, NSA II, Kingdom of Bahrain, at a price of $9,788,000 (ASUMF[1] ¶ 1; GSMF[2] ¶ 1; R4, tab 8 at 2-3). A limited number of contract provisions are relevant to the pending motions.

---

[1] Appellant's Statement of Undisputed Material Facts.
[2] Government's Statement of Material Facts.

2. As awarded, the contract had 12 contract line item numbers (CLINs). The largest of these were CLIN 0002 providing for the construction of a Forward Support Services (FSU)/Forward Logistics Site (FLS) facility priced at $4,354,184, and CLIN 0004 providing for the construction of a Command Headquarters (HQ) facility priced at $4,255,742 (ASUMF ¶ 1; GSMF ¶ 1; R4, tab 8 at 4-9).

3. The contract required AICI to complete the HQ facility and related CLINs by 7 March 2015 and the FSU/FLS facility and related CLINs by 6 April 2015[3] (R4, tab 8 at 9-10, 32-33).

4. The contract contained the Federal Acquisition Regulation (FAR) 52.211-12, LIQUIDATED DAMAGES—CONSTRUCTION (SEP 2000) clause. Pursuant to FAR 11.503(b), the contracting officer has the authority to revise this clause to provide for different liquidated damages amounts for separate parts of the work, but she did not do so here. Accordingly, the contract did not differentiate liquidated damages for the HQ facility work to be completed on 7 March 2015 and the FSU/FLS work to be completed on 6 April 2015. It simply provided: "If the Contractor fails to complete the work within the time specified in the contract, the Contractor shall pay liquidated damages to the Government in the amount of $2,447.00 for each calendar day of delay until the work is completed or accepted." (ASUMF ¶ 2; GSMF ¶ 2; R4, tab 8 at 33)

5. Finally, the contract also contained FAR 52.211-13, TIME EXTENSIONS (SEP 2000), which provides:

> Time extensions for contract changes will depend upon the extent, if any, by which the changes cause delay in the completion of the various elements of construction. The change order granting the time extension may provide that the contract completion date will be extended only for those specific elements related to the changed work and that the remaining contract completion dates for all other portions of the work will not be altered. The change order also may provide an equitable readjustment of liquidated damages under the new completion schedule.

(App. mot. at 9; R4, tab 8 at 33)

6. AICI did not complete the original contract work on time. In a 5 February 2015 letter, the contracting officer (CO) notified AICI that she would assess liquidated

---

[3] These are the dates listed at page 10 of the contract and the dates used by the parties in their briefs (ASUMF ¶ 1; GSMF ¶ 1). As discussed below, the Corps did not use these dates for assessing liquidated damages.

damages starting on 10 March 2015 at a daily rate of $1,223.50 (one-half the rate specified in the contract) for failure to complete the HQ facility (R4, tab 22). After AICI failed to complete the HQ facility by 9 March 2015 the Corps subsequently withheld $26,917 in liquidated damages (22 x $1,223.50) from AICI's March 2015 invoice (ASUMF ¶ 3; GSMF ¶ 3).

7. AICI also failed to complete the FSU/FLS facility on time. In AICI's April 2015 invoice, the Corps withheld an additional $63,622 in liquidated damages. This amount consisted of $9,788 for the HQ facility only from 1-8 April 2015 (8 x $1,223.50), and $53,834 for both facilities for the remainder of the month at the contractual rate of $2,447 per day (22 x $2,447).[4] (ASUMF ¶ 4; GSMF ¶ 4; R4, tab 151) Finally, the CO withheld an additional $68,516 from 1-28 May 2015 (28 x $2,447), at which point the Corps agreed that the facilities were substantially complete (ASUMF ¶ 7; GSMF ¶¶ 6-7; R4, tab 152 at 1). The Corps withheld a total of $159,055 in liquidated damages.

8. There is a material dispute of fact as to whether the buildings were sufficiently complete on 18 May 2015 to stop the assessment of liquidated damages (ASUMF ¶ 6; GSMF ¶ 6; R4, tab 3 at 3-4).

9. On 5 January 2016, after AICI had demobilized from the site, the Corps issued RFP-0007 seeking a proposal from AICI for a variety of work in the HQ facility (R4, tab 128). AICI submitted an original and then a revised proposal (R4, tabs 84, 92). The parties engaged in negotiations but ultimately were unable to agree upon a final price for the work (GSMF ¶ 8; app. reply to GSMF ¶ 8).

10. Neither party has directed the Board to any extrinsic evidence indicating that the parties discussed or contemplated remission of the previously withheld liquidated damages as part of the modification for the RFP-0007 work.

11. After the conclusion of these negotiations, on 11 March 2016, the CO issued unilateral Modification No. P00011 for $168,710. The modification required AICI to do the following in the HQ facility: add cooling in the server and operations room; add a security grill in Room 204; remove a window in Room 102; and modify cabinets in Room 208. Modification No. P00011 contained the following language:

---

[4] The parties have not explained why the liquidated damages assessment began slightly later than the completion dates identified above (*see* ASUMF ¶ 1; GSMF ¶ 3). One explanation is that the contract also provided for completion within 395 and 425 days for the HQ and FSU/FLS facilities, respectively, after receipt of the notice to proceed (on 7 February 2014) (*see* R4, tab 8 at 32, tab 23).

The Period of Performance has increased for CLIN 0004 for a period of two-hundred-thirty-two (232) days from the effective date of this modification of March 11, 2016. This results in a Period of Performance end date of October 29, 2016. This Period of Performance covers work under this modification only, not for the overall contract.

(ASUMF ¶ 8; GSMF ¶ 8; app. reply to GSMF ¶ 8; R4, tab 19 at 2)

12. Modification No. P00012 extended the completion date a further 59 days. It stated:

[T]he Period of Performance is extended for the work under modification P00011 on CLIN 0004 from October 29, 2016 to December 27, 2016. This Period of Performance covers work under modification P00011 only, the Period of Performance for the overall contract remains unchanged.

(ASUMF ¶ 9; GSMF ¶ 9; gov't resp., attach. 4 at 5-6)

13. AICI completed the Modification Nos. P00011 and P00012 work prior to the 27 December 2016 deadline (ASUMF ¶ 10; GSMF ¶ 10).

14. On 6 September 2016, AICI submitted an uncertified claim to the CO seeking return of the liquidated damages. AICI contended, among other things, that by issuing Modification Nos. P00011 and P00012, the Corps could no longer assess liquidated damages based on a superseded completion date. AICI also contended that, even if these modifications did not extend the contract completion date, there was no contractual basis for the assessment of one-half of the liquidated damages for failure to complete the HQ facility in March 2015, nor was there any basis for assessment after 18 May 2015, the date on which it contends it reached substantial completion. (R4, tab 3)

15. The CO issued a final decision on 7 November 2016 (R4, tab 2). She rejected AICI's main argument that the government could not assess liquidated damages before the completion dates established by Modification Nos. P00011 and P00012 (*id.* at 6-7). She also disagreed with AICI's contention that it reached substantial completion on 18 May 2015 because she found that it did not complete testing and balancing of the HVAC system until 28 May 2015 (*id.* at 6). But the CO agreed with AICI's alternate argument that there was no provision in the contract that allowed for the assessment of half liquidated damages because the contract established only one rate. She ordered the release of $31,811 in liquidated damages. (*Id.* at 7-8)

4

16. It is not clear how the CO calculated the $31,811. This amount is equal to 26 days at $1,223.50. However, it appears that the Corps actually withheld 30 days of liquidated damages at $1,223.50, which would total $36,705 (*see* SOF ¶¶ 6-7).

17. After AICI filed a timely appeal docketed as ASBCA No. 60948, it submitted to the CO a claim certification dated 23 March 2017 (R4, tab 164). The CO again denied the claim on 19 April 2017 (R4, tab 165). AICI then filed a second appeal docketed as ASBCA No. 61166.

## DECISION

AICI moves for summary judgment on the ground that, as a result of Modification Nos. P00011 and P00012, the government could not assess liquidated damages before the revised 27 December 2016 completion date. Because AICI completed the work prior to this date, it seeks remission of all liquidated damages previously withheld by the government. (App. mot. at 1-2) In its cross-motion, the government essentially contends that Modification Nos. P00011 and P00012 had no effect on the liquidated damages it had already withheld.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When considering a motion for summary judgment, the Board's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Id.* at 249. Conclusory statements and mere denials are not sufficient to ward off summary judgment. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987). The fact that both parties have moved for summary judgment does not mean that the Board must grant judgment as a matter of law for one side or the other. Rather, the Board must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration. *Id.* at 1391.

We start with the plain language of the contract, which we must interpret to give reasonable meaning to all its parts. *Gardiner, Kamya & Assocs., P.C. v. Jackson*, 467 F.3d 1348, 1353 (Fed. Cir. 2006). We may not use extrinsic evidence to change the terms of a contract that are clear on its face. *Interwest Construction v. Brown*, 29 F.3d 611, 615 (Fed. Cir. 1994).

We first consider whether the government under any circumstances could have added work to the contract in March of 2016 while retaining liquidated damages it had already withheld. We conclude that it is possible because the incorporated FAR 52.211-13 clause allows the CO to grant a time extension "only for those specific

elements related to the changed work" and provide "that the remaining contract completion dates for all other portions of the work will not be altered."

AICI contends that FAR 52.211-13 cannot be relied upon to authorize the Corps' actions because FAR 11.503(c) provides that the clause "should be used only when the liquidated damages clause of FAR 52.211-12 has been revised to state the amount of liquidated damages for delay of each separate part or stage of the work" (app. mot. at 8-9). This is inaccurate. While FAR 11.503(c) requires the insertion of FAR 52.211-13 when the liquidated damages clause has been revised to reflect different liquidated damages amounts for the various stages of the work, it does not prohibit its use in other circumstances.

*Sundt Construction, Inc.*, ASBCA No. 57358, 11-1 BCA ¶ 34,772, *aff'd*, 469 F. App'x 916 (Fed. Cir. 2012), is an example of an appeal where the government modified the contract to add time to a discrete aspect of the project but retained liquidated damages already withheld. The *Sundt* contract required the construction of a number of housing units and contained a liquidated damages clause that provided for separate liquidated damages assessments for late completion of the project and for each individual housing unit. *Id.* at 171,115. One of the units was subject to government-requested changes and the parties entered into a bilateral modification that extended the completion date for that unit only. *Id.* at 171,116-17. When the contractor later challenged the assessment of liquidated damages prior to completion of the changed unit, we denied the appeal based on the language in the bilateral modification, which we read to preserve liquidated damages that had already been assessed. *Id.* at 171,118-19.

The second question then is whether the government in this appeal added time and work to the contract but preserved already assessed liquidated damages. We conclude that it did so because, read as a whole, Modification No. P00011 clearly carved out a separate completion date for the new work while preserving liquidated damages already assessed. We focus on the three sentences of the paragraph granting the time extension. Read in isolation, the first sentence would suggest that the time extension was for all of CLIN 0004 (the HQ facility): "The Period of Performance has increased for CLIN 0004 for a period of two-hundred-thirty-two (232) days" (SOF ¶ 11). But the final sentence of the paragraph clarifies that "[t]his Period of Performance covers work under this modification only, not for the overall contract" (*id.*). Elsewhere, the modification identifies four discrete pieces of work, all in the HQ facility. Thus, the time extension paragraph of Modification No. P00011 does nothing more than carve out a separate completion date for the discrete work items added by the modification, while maintaining the completion date for the bulk of the work under CLIN 0004. Modification No. P00012, which contained similar language as P00011, does not change this analysis.

AICI contends in its motion that "[b]y issuing Modification Nos. P00011 and P00012, the Government effectively changed the contract completion date for all work" (app. mot. at 2). We disagree. Appellant's interpretation would read the sentence "[t]his Period of Performance covers work under this modification only, not for the overall contract" out of the contract, or render the modified contract internally contradictory, which is inconsistent with the rules of contract interpretation. *Gardiner*, 467 F.3d at 1353.

Because the contract is clear there is no reason for us to resort to extrinsic evidence. However, the Court of Appeals for the Federal Circuit has used extrinsic evidence to confirm its determination that the language of a modification was clear. *Gardiner*, 467 F.3d at 1354. In *Gardiner*, the Court of Appeals held that a modification clearly did not provide for a retroactive pricing adjustment. The Court nevertheless examined the negotiating history of the modification and found the silence to be telling:

> [I]t seems inconceivable that the parties would have agreed
> to retroactive pricing without making that intent explicit
> either during the negotiations leading to the agreement or
> in the agreement itself. Since they did neither, we
> conclude that even if there were an ambiguity in the
> language, it should be resolved in favor of the
> government's position.

*Id.*

So too here. Under these facts, specifically, where the contractor completed the work and demobilized from the site before the government issued an RFP for a relatively small amount of work, it is inconceivable to us that the government would simply forgive liquidated damages, except perhaps as consideration for the additional work. If the parties had contemplated this, we would expect to see it documented in either the negotiation history or the modification itself. It is not in the modification and neither party has directed us to any such negotiation history (*see* SOF ¶ 10).

Finally, the cases that AICI cites do not lead to a different result. *Abcon Associates, Inc. v. United States*, 49 Fed. Cl. 678 (2001) is based on some facts similar to the present matter but its differences ultimately are more important. In *Abcon*, the contract provided for separate completion dates for phases 1a, 1b, and 2, but just as in this appeal the contract did not specify unique liquidated damages amounts for failure to complete on each of these dates. Nevertheless, the CO, also like the CO here, began assessing liquidated damages when the first of these dates passed. *Id.* at 688. The Court of Federal Claims held that this assessment was not authorized by the contract. *Id.* at 689. But in this appeal the CO conceded this point in her final decision

7

(SOF ¶ 15). A more fundamental difference is that in *Abcon* there was nothing like Modification No. P00011 where the government attempted to carve out a separate completion date for a small subset of new work. Thus, we do not have the benefit of any analysis by the Court of Federal Claims on the central issue in this appeal.

*Schuster Engineering, Inc.*, ASBCA No. 28760 *et al.*, 87-3 BCA ¶ 20,105, also does not support appellant's position. The salient point in that very long opinion boils down to this: if it is impossible to complete the work by the contract completion date, the government cannot assess liquidated damages based on that impossible completion date. We held that by requiring the contractor to complete the work, the government effectively changed the completion date until all the work could be completed. *Id.* at 101,798-99. Accordingly, because *Schuster* involved the original contract work, we conclude it does not speak to the work added after contract completion in this appeal.

<u>CONCLUSION</u>

AICI's motion for summary judgment is denied. We grant the government's motion except as to the period from 19-28 May 2015 for which there is a material dispute of fact as to whether appellant had completed the work (SOF ¶ 8) and with respect to the precise amount of liquidated damages to be remitted due to the CO's concession on one-half liquidated damages days (SOF ¶ 16).

The parties shall submit a joint status report four weeks from the date of this opinion proposing further proceedings.

Dated: 29 May 2018

MICHAEL N. O'CONNELL
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

8

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 60948, 61166, Appeals of American International Contractors, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals